IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHEYENNE LOUISE GOODIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:21-cv-00265 |
| ) | |
| BUTLER, PA CYS; BUTLER, PA ) | Chief Judge Mark. R. Hornak |
| DOMESTIC RELATIONS; BUTLER, PA ) | |
| PUBLIC DEFENDER OFFICE; BUTLER, ) | |
| PA DISTRICT ATTORNEY; COUNTY OF ) | |
| BUTLER, PA; SOLICITOR OF BUTLER, ) | |
| PA; ATTORNEY BOBETTE ROPER ) | |
| MAGNUSEN; ATTORNEY AMY ) | |
| BURTON. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**OPINION**

Pending before the Court is *pro se* Plaintiff Cheyenne Louise Goodin's Amended Complaint (ECF No. 10) and Plaintiff's Motion to Rule Upon the Amended Complaint (ECF No. 13).[1] Plaintiff is proceeding *in forma pauperis*. (*See* ECF No. 4.) Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss Plaintiff's claims if it determines that the claims "(i) [are] frivolous or malicious; (ii) fail[] to state a claim on which relief may be granted; or (iii) seek[] monetary relief against a defendant who is immune from such relief." Upon careful review of the Amended Complaint, the Court concludes that it will dismiss each federal claim either pursuant to § 1915(e)(2)(B)(ii)–(iii), or for lack of jurisdiction as to claims for declaratory or injunctive relief, as well as Plaintiff's state law claims because the Court finds no basis to exercise supplemental

---

[1] Also pending before the Court is Plaintiff's Motion to Amend Caption (ECF No. 11), in which Plaintiff seeks to join "Judge William 'Wink' Robinson" as a Defendant. Because the Court now dismisses the Plaintiff's Amended Complaint in its entirety, the Court also dismisses the Motion to Amend Caption without prejudice. Given the disposition set out in this Opinion, the Court also dismisses as moot Plaintiff's Motion at ECF No. 13.

1

jurisdiction over them. Thus, for the reasons explained below, the Court **DISMISSES** the Amended Complaint (ECF No. 10) without leave to amend, as the Court concludes that amendment would be futile.

I.  **BACKGROUND**

On March 8, 2021, Plaintiff filed her original *pro se* Complaint in this action (ECF No. 5), which, as the Court observed in its Order dismissing that Complaint, "focuse[d] its allegations on the claim that [then-]Defendant [Gilbert] Smith falsified information on the birth certificate of [] Plaintiff's son." (ECF No. 9, at 1.) The first-filed Complaint also "name[d] as Defendants various 'offices' of Butler County, Pennsylvania, and one or more individual occupants of such offices," and it appeared to "assert [] claim[s] via 42 U.S.C. § 1983 . . . [of] violations of the First, Fourth, Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the federal Constitution." (*Id.* at 1–2.)

On March 24, 2021, this Court dismissed the action, "conclud[ing] that even broadly and liberally construed, the Complaint d[id] not show the existence of a claim against any Defendant cognizable in this Court." (*Id.* at 2.) The Court granted Plaintiff leave to amend her Complaint because "the Court [could not] on th[e] record conclude that any amendment would necessarily be futile." (*Id.*)

Pursuant to the Court's March 24, 2021 Order, on April 21, 2021, Plaintiff filed her Amended Complaint (ECF No. 10). The Amended Complaint differs from the first-filed Complaint in the following relevant ways: the Amended Complaint (1) no longer includes Gilbert Smith as a Defendant (*see* ECF No. 10, at 1); (2) now includes the Solicitor of Butler County, Pennsylvania as a Defendant (*id.*); (3) now includes a "Preamble," which references an attorney named Matthew Dec, including comments that Mr. Dec has made to Plaintiff indicating his distrust of officials within the justice system (*see id.* at 2–4); (4) adds references to 42 U.S.C. § 1985 and

the Racketeer Influenced and Corrupt Organizations (RICO) Act to the list of "civil statutes upon which Plaintiff now pleads" (*id.* at 6); (5) no longer references the Eighth Amendment (*see id.* at 1–21); and (6) includes pages entitled "Constitutional Cause for Action from This Court" in which Plaintiff attempts to substantiate her §§ 1983 and 1985 and RICO claims (*see id.* at 16–21).[2]

This latter additional section alleges that "the listed defendants": (1) "Violate[d] [Plaintiff's] [Fifth] Amendment Right to Equal Protection . . . when they were presented with the knowledge that [Mr. Smith] falsified Birth Records and Court Documents to steal her son and did nothing;" (2) "denied Plaintiff Equal Protection ([under the] Fifth Amendment) to ensure accuracy of records under the law;" (3) "denied Plaintiff proper Procedural Due Process ([under the] Fourteenth Amendment) by pushing to close the case when they KNEW every Court Record was false;" (4) "manifest[ed] a policy of trampling Rights and disdain for Fiduciary Duty to Uphold the Law upon receiving an opportunity to correct this issue when first sued, and yet refusing to correct the Constitutional errors and even criminal acts;" (5) "violate[d] the First Amendment Right to Familial Association and even greater Intimate Association;" (6) conspired under 42 U.S.C. § 1985 to violate Plaintiff's rights;[3] and (7) violated RICO through "an organized syndicate

---

[2] In her Amended Complaint, Plaintiff lists fifteen "civil statutes upon which [she] now pleads": (1) "Negligence;" (2) "Gross Negligence;" (3) "Breach of Fiduciary Duty;" (4) "Malicious Prosecution/Prosecutorial Misconduct;" (5) "42 USC [§] 1983;" (6) "42 USC [§] 1988;" (7) "42 [USC §] 1985;" (8) "Violation of First Amendment #1 – Familial and Intimate Association;" (9) "Violation of First Amendment #2 – Failure to Address Grievance;" (10) "Violation of First Amendment #3 – Freedom to Practice her Religious Beliefs;" (11) "Violation of Fifth Amendment – Deprivation of Due Process;" (12) "Violation of Fourteenth Amendment – Deprivation of Due Process;" (13) "42 USC [§] 14141 Pattern and Practice;" (14) "Conspiracy to the various violations previously [listed];" and (15) "RICO Act." (ECF No. 10, at 6 (capitalization in original).) The Court construes the constitutional violations that Plaintiff lists at (8), (9), (10), (11), and (12)—and at (4), to the extent that that cause of action refers to one under the Fourth Amendment—as part of Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, and 1988 because those statutes provide the mechanism by which Plaintiff can bring an action against state actors like Defendants for constitutional violations. *See Mitchum v. Foster*, 407 U.S. 225, 239 (1972) ("Section 1983 opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and the laws of the Nation.").

[3] Section 1985(3)—which proscribes "conspir[ing] . . . for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all

3

of corruption" that "Plaintiff believes that she can show." (*Id.* at 18–19 (capitalization in original).)

Beyond the changes identified above, the Amended Complaint does not materially differ from the first-filed Complaint. Importantly, the facts that Plaintiff alleges support her claims for relief—which appear in the "Case History" portion of Plaintiff's Amended Complaint—are identical to those in the first-filed Complaint. (*Compare id.* at 7–12, *with* ECF No. 5-1, at 3–8.) Further, Plaintiff's requested relief—declaratory relief related to Defendants' allegedly fraudulent actions and the paternity of Plaintiff's son, an injunction to remove her son from Mr. Smith, and punitive damages (*see* ECF No. 10, at 21)—remains substantially the same as the relief Plaintiff requested in the first-filed Complaint in this Court and in her state court complaint. (*Compare id.*, *with* ECF No. 5, at 6, *and* ECF No. 5-1, at 9.)

## II.     LEGAL STANDARD

Under 28 U.S.C. § 1915(e)(2)(B), a court must dismiss an action by an *in forma pauperis* litigant if the court determines that "the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." For dismissal on ground (ii), "[t]he applicable standard of review . . . is the same as the standard for a [Federal Rule of Civil Procedure] 12(b)(6) motion." *Greer v. Court of Common Pleas of York Cnty.*, 2007 WL 1853766, at *2 (M.D. Pa. June 26, 2007) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 (3d Cir. 2002)).

"To prevent dismissal" under Rule 12(b)(6), a complaint "must [] set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). If a complaint fails to provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it

---

persons within such State or Territory the equal protection of the laws"—appears to be the most applicable subsection of § 1985 on the facts in the Amended Complaint.

rests," it is insufficient under the Federal Rules of Civil Procedure to state a claim upon which relief can be granted. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (omission in original) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (explaining that *Twombly* did not alter the pleading standard of Rule 8(a)(2) requiring plaintiffs to allege sufficient facts to put defendants on notice of the defendants' alleged wrongdoing).[4]

To determine whether a complaint is sufficient to state a claim, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* (citation omitted). Construing a complaint favorably to a plaintiff is especially important when the plaintiff is *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (citations omitted)).

### III.    DISCUSSION

The Amended Complaint, liberally construed given Plaintiff's *pro se* status, does not meaningfully expand on the allegations that Plaintiff made in her first-filed Complaint such that the claims can now survive as pled. While the Amended Complaint more clearly references the legal standard for claims brought under 42 U.S.C. §§ 1983 and 1985, more clearly states which constitutional rights Plaintiff alleges that Defendants violated, and refers to a new claim under RICO, it remains fundamentally deficient—even under the less stringent standards for *pro se*

---

[4] The Court bases its decision as to whether to dismiss the claims in Plaintiff's Amended Complaint on 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii) as well as jurisdictional principles; thus, the Court need not now further elaborate on the legal standard for evaluating a complaint for frivolousness or maliciousness, *see id* § 1915(e)(2)(B)(i), nor opine on Plaintiff's Amended Complaint in that regard.

plaintiffs—for several reasons. For instance, some claims in the Amended Complaint fail as alleged because they "fail[] to state a claim on which relief may be granted," requiring this Court to dismiss such claims under § 1915(e)(2)(B)(ii). Other claims additionally fail as a matter of law and require dismissal under § 1915(e)(2)(B)(iii) because Plaintiff seeks to recover from parties who are immune from Plaintiff's claims against them. Further, some claims fail because this Court lacks jurisdiction over them.

Below, the Court first explains why it lacks jurisdiction over Plaintiff's claims to the extent that the claims seek declaratory and injunctive relief. Next, the Court explains why Plaintiff's federal claims against each Defendant for damages—including punitive damages—cannot survive as a matter of law.

### A. **Plaintiff's Requests for Declaratory and Injunctive Relief Under § 1983**

Section 1983 allows relief in the form of declaratory relief or an injunction. *See* 42 U.S.C. § 1983.[5] However, the *Rooker-Feldman* doctrine "deprives federal courts of subject matter jurisdiction," and requires dismissal of § 1983 claims for injunctive relief, when "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court's judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Shallenberger v. Allegheny Cnty.*, 2020 WL 1465853, at *3 (W.D. Pa. Mar. 26, 2020) (quoting *Great W. Mining & Mineral*

---

[5] The text of 42 U.S.C. § 1985 only refers to "action[s] for the recovery of damages." § 1985(3) ("[I]n any case of conspiracy set forth in this section, . . . whereby [a person] is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against one or more of the conspirators."). The Third Circuit has not opined on whether this language forecloses the possibility of declaratory or injunctive relief under that statute. However, as the Court explains, the *Rooker-Feldman* doctrine bars Plaintiff's requests for declaratory and injunctive relief within the facts of Plaintiff's case regardless of the federal statute under which Plaintiff asserts a cause of action. Thus, the Court need not now address whether § 1985 allows for declaratory or injunctive relief.

6

*Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)); *see Vuyanich v. Smithton Borough*, 5 F.4th 379, 385 (3d Cir. 2021). The second element requires the plaintiff's injury to be "produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it," while the fourth element exists when "the federal court's review . . . concern[s] the bona fides of the prior judgment" and not just where "the claim for relief if granted would as a practical matter undermine a valid state court order." *Vuyanich*, 5 F.4th at 385–88 (internal quotation marks omitted). This doctrine "bars lower federal courts from exercising jurisdiction over a case that is the functional appeal from a state court judgment." *Shallenberger*, at \*4. (internal quotation marks omitted) (quoting *Marran v. Marran*, 376 F.3d 143, 149–50 (3d Cir. 2004)). "The Third Circuit has held that lower courts must examine the nature of the requested relief (*i.e.*, injunction vs. damages) in determining whether a federal claim is inextricably intertwined with a state court's decision" such that the *Rooker-Feldman* doctrine requires the court to decline to exercise jurisdiction. *Id.* (citations omitted).[6]

In *Shallenberger*, the court held that the *Rooker-Feldman* doctrine barred the plaintiffs' claims for injunctive relief against state officials even though the plaintiffs' claims were "based on attacking the actions of state officials" and not on "attacking the judgment of the state court." *Id.* at \*4–5. The *Shallenberger* plaintiffs—a mother and her parents and children—alleged that "Defendant Allegheny County Children and Youth Services [] and others failed to notify [the mother] of a hearing at which her parental rights would be terminated[, which] led to a state-court judge terminating those rights." *Id.* at \*1. The court rejected the plaintiffs' argument that the

---

[6] While courts generally discuss the *Rooker-Feldman* doctrine in the context of injunctive relief, "there is little practical difference between injunctive relief and declaratory relief," *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982), and a federal district court's declaratory judgment as to the invalidity of a state court judgment would run equally afoul to the *Rooker-Feldman* doctrine as an injunction would because it would put the federal district court in the position of "sitting as a *de facto* appellate court over a state []court judge," *see Shallenberger*, 2020 WL 1465853, at \*5.

7

*Rooker-Feldman* doctrine did not apply; the court reasoned that, by seeking injunctive relief and asking the court to "stop the adoption," plaintiffs were "expressly asking th[e] [c]ourt to undo the state court's parental-termination decision." *Id.* at *1, 4. Thus, "while [p]laintiffs [were] attacking the state officials that failed to give them notice," the relief plaintiffs' sought would have required the federal district court to reverse the state court's ruling, which triggers application of the *Rooker-Feldman* doctrine and precludes the federal district court's jurisdiction. *Id.* at *4.

*Shallenberger* is directly analogous to this case to the extent that Plaintiff seeks declaratory and injunctive relief against the Butler County, Pennsylvania officials and Offices named as Defendants, specifically the Butler County District Attorney, Butler County Solicitor, Butler County Children and Youth Services (CYS), Butler County Domestic Relations, Butler County Public Defender Office, and the County itself.[7] While the plaintiffs in *Shallenberger* were "attacking the state officials that failed to give them notice," the ultimate injury that those plaintiffs suffered—termination of parental rights—was caused by the state court's ruling, and the plaintiffs sought reversal of that ruling by the federal court. *Id.*

Similarly, in this case, Plaintiff's primary injury is the loss of custody of her son. Her request that this Court enter a declaratory judgment requiring Defendants to "reevaluat[e] [their] Fraud[-]based decisions" and administer "an immediate Paternal Test . . . [to] Gilbert Smith[] unless he is willing to admit on court records that he is not the natural father," while on its face directed at non-judicial officials, ultimately asks this Court to void the state court determination as to custody of Plaintiff's son. (ECF No. 10, at 21.) The same goes for Plaintiff's request that this Court grant "an injunction upon CYS to remove her son from [Mr. Smith,] place her son in a

---

[7] As for Plaintiff's claims against Attorneys Bobette Roper Magnusen and Amy Burton, those claims, regardless of the type of relief sought, fail for the reasons discussed in this Opinion. *See infra* Section III.B.v.

8

proper foster home where she can visit him[,] and [] nullif[y] [] all previous court decisions." (*Id.*) In other words, the declaratory and injunctive relief that the Amended Complaint seeks is the "functional equivalent of an appeal" to alter a custody judgment made in state court and of which the Plaintiff was on the losing end. *Shallenberger*, 2007 WL 1465853, at *4.

Thus, pursuant to the *Rooker-Feldman* doctrine, the Court does not have the power to adjudicate Plaintiff's claims in the Amended Complaint to the extent that they seek declaratory or injunctive relief. The Court dismisses all claims for such relief without prejudice for want of jurisdiction and without leave to amend because amendment would be futile as a matter of law.

### B. Plaintiff's Request for Damages Under §§ 1983 and 1985[8]

Sections 1983 and 1985 allows suits for monetary damages. *See* 42 U.S.C. §§ 1983, 1985(3). Whether Plaintiff's claims for damages—specifically punitive damages (*see* ECF No. 10, at 21)—against any Defendants can survive as alleged depends on whether any Defendants are immune from such claims, whether punitive damages are recoverable from Defendants, and whether the Amended Complaint contains "sufficient factual matter to show that the claim[s] [are] facially plausible," *Fowler*, 578 F.3d at 210 (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). The Court applies these principles as to each Defendant as set out below.

#### i. County of Butler

The Court first notes that Plaintiff's request for punitive damages from Butler County, Pennsylvania fails because "a municipality is [generally] immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Other circuits

---

[8] Although Plaintiff's Amended Complaint also refers to 42 U.S.C. § 1988, this statute does not provide a separate substantive cause of action, but rather allows a plaintiff who prevails in a suit covered by § 1988 to recover costs. *See Kentucky v. Graham*, 473 U.S. 159, 164–65 (1985) ("[W]here a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant."). Thus, the Court does not address Plaintiff's claims pursuant to § 1988 separately from her claims under §§ 1983 and 1985.

have held that "[t]he punitive damages rule of *City of Newport* is not confined to Section 1983 and applies to Section 1985" as well. *See, e.g.*, *Bell v. City of Milwaukee*, 746 F.2d 1205, 1270 (7th Cir. 1984), *overruled on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005). *Cf. Jorden v. Nat'l Guard Bureau*, 799 F.2d 99, 108 n.12 (3d Cir. 1986) (concluding that because the defendants were immune from a damages action under § 1983, there was no basis to hold them susceptible to suit under § 1985).

To the extent Plaintiff seeks non-punitive monetary damages from Butler County, Plaintiff's Amended Complaint fails to plausibly show that she is entitled to recover such damages under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). "A plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell*, 436 U.S. at 690–91). Municipal policy and custom includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Monell*, 436 U.S. at 691). A municipality may be liable if either the policy or custom is itself unconstitutional or if the policy or custom is the "moving force" behind unconstitutional acts of the municipality's employees. *Thomas*, 749 F.3d at 222 (citations omitted).

Plaintiff's Amended Complaint does not even reference, let alone set out sufficient facts to show, a policy or custom of Butler County that could plausibly establish Plaintiff's ability to recover damages from this Defendant under § 1983. (*See* ECF No. 10, at 1–21.) Without citing *any* actions by Butler County, including through its lawmakers or policymaking officials, Plaintiff not only fails to make out a plausible claim against the County under § 1983, but she also fails to allege a claim under § 1985(3), which requires an act in furtherance of a conspiracy to violate a

plaintiff's constitutional rights. *See Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) ("[T]o state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons [of] the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.").

Accordingly, the Court dismisses Plaintiffs' claims for damages against Butler County. Because this Court has permitted Plaintiff to amend her Complaint once, and the Amended Complaint fails to provide even one assertion related to Butler County's policies or customs that could make the County liable to Plaintiff, the Court concludes that no facts exist on which to hold Butler County liable. Thus, the Court dismisses the claims for damages against Butler County with prejudice.

### ii. Butler County District Attorney; Butler County Solicitor; and Butler County Children and Youth Services ("CYS")

The Amended Complaint's allegations as to these Defendants fail to assert sufficient facts to state a claim for damages against these Defendants. First, as to the Butler County Solicitor, the Amended Complaint alleges that "the Solicitor . . . [] appeared at [Plaintiff's] motion to file a federal suit" and told her that he did not care "what happened to her infant child." (ECF No. 10, at 12.) Second, as to CYS, the Amended Complaint alleges that Plaintiff's "CYS caseworker Alex" and the CYS office "were told," presumably about Plaintiff's attempt to recover her son from Mr. Smith, "and didn't want to help [Plaintiff] but put [her] in to[] see a therapist;" it also states that "CYS . . . did not even query what occurred, [] gave [Plaintiff's] son to that idiot [Mr. Smith] . . . , and told [Plaintiff] . . . that falsify[ing] Public Records and giv[ing] false Sworn Statements" is

11

permissible and that "[t]hey[9] do it all the time to close a case and get paid." (*Id.* at 10–11.) The Amended Complaint contains no references to the Butler County District Attorney. (*See id.* at 1–21.)

These assertions fail to put any of the Defendants named in this section on notice of the specific unconstitutional conduct that they have allegedly committed. *See Phillips*, 515 F.3d at 233; *Gass v. DYFS Workers*, 371 F. App'x 315, 316–17 (3d Cir. 2010) (affirming the district court's holding that a complaint against state officials "violated [Federal Rule of Civil Procedure] 8(a)'s pleading requirements because it provide[d] defendants with no indication of which constitutional rights they ha[d] allegedly violated" (internal quotation marks omitted)). Similarly, as to Plaintiff's § 1985 claims, the allegations are insufficient to show that these Defendants made an agreement or took any action in furtherance of a conspiracy to deprive Plaintiff of her constitutional rights. *See Lake*, 112 F.3d at 685.

Further, to the extent that the Amended Complaint's claims against these Defendants are claims against municipal entities, the claims fail under *Monell* for the reasons explained above. *See Thomas*, 749 F.3d at 222 (citing *Monell*, 436 U.S. at 690–91). Even construing the Amended Complaint liberally in favor of Plaintiff, the only assertion related to these Defendants that possibly alludes to a policy or custom of the Butler County District Attorney, Solicitor, or CYS is Plaintiff's claim that she was told that falsification of public records and of sworn testimony is a routine occurrence. However, the Court cannot infer from this assertion that any of these municipal Offices has a policy or custom that would violate § 1983 under *Monell*'s standards. Further, even if the Court could conclude that the alleged routine fabrication of records and testimony is "conduct properly attributable to [Butler County]," such a showing would be insufficient to show Plaintiff's

---

[9] The Court's best guess is that "they" refers to attorneys.

entitlement to relief because the Amended Complaint does not demonstrate "the requisite degree of culpability" of Butler County or "a direct causal link between the [alleged] municipal action and [] deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

The Court also observes that each of the defendants listed in this section are absolutely immune from claims brought pursuant to 42 U.S.C. §§ 1983 and 1985(3). *See Imbler v. Patchman*, 424 U.S. 409, 431 (1976) (holding that a district attorney prosecuting a case on behalf of the state is immune from civil rights suits under § 1983); *Ernst v. Child & Youth Servs. of Chester Cnty.,* 108 F.3d 486, 488–89 (3d Cir. 1997) ("[C]hild welfare workers and attorneys who prosecute dependency proceedings on behalf of the state are entitled to absolute immunity from suit for all of their actions in preparing for and prosecuting such dependency proceedings."); *Rees v. Office of Children & Youth*, 744 F. Supp. 2d 434, 439, 462 & n.8 (W.D. Pa. 2010) (extending absolute immunity, as stated in *Ernst*, to an assistant county solicitor who was involved in "preparing for, initiating, and prosecuting dependency proceedings"). Further, as to CYS, no facts within the Amended Complaint facially suggest that CYS acted outside the scope of the judicial process such that absolute immunity would not apply to the Office. *See Breakwell v. Allegheny Cnty. Dep't of Human Servs.,* 406 F. App'x 593, 597 (3d Cir. 2010) (citing *Ernst*, 108 F.3d at 497 n.7).

Because these Defendants are immune from suit under §§ 1983 and 1985 under the circumstances Plaintiff has alleged in both her first-filed Complaint and in the Amended Complaint that the Court permitted Plaintiff to file, the Court concludes that further amendment of the claims against the Butler County District Attorney, Butler County Solicitor, and CYS would be futile and dismisses those claims with prejudice.

### iii. Butler County Domestic Relations

Similarly, the Amended Complaint fails to state a claim for damages against the Butler County Domestic Relations Office because it does not provide that Office with notice of the specific unconstitutional conduct that it has allegedly committed. *See Phillips*, 515 F.3d at 233; *Gass*, 371 F. App'x at 316–17. The Amended Complaint's only reference to the Butler County Domestic Relations Office is the assertion that, along with CYS, "Domestic Relations did not even query what occurred, [] gave [Plaintiff's] son to that idiot [Mr. Smith] . . . , and told [Plaintiff] . . . that falsify[ing] Public Records and giv[ing] false Sworn Statements" is permissible and that "[t]hey[10] do it all the time to close a case and get paid." (ECF No. 10, at 11.) This statement lacks sufficient detail as to specific actions by the Domestic Relations Office to plausibly state a claim that the Office violated Plaintiff's constitutional rights under either §§ 1983 or 1985.

Moreover, to the extent the Amended Complaint's claims against this Defendant are claims against a municipal entity, the claims fail under *Monell* for the reasons explained above. *See Thomas*, 749 F.3d at 222 (citing *Monell*, 436 U.S. at 690–91); *Brown*, 520 U.S. at 404.

Because Plaintiff has not alleged any specific acts by the Butler County Domestic Relations Office, despite having an opportunity file an Amended Complaint, the Court concludes that no such facts exist that would allow Plaintiff to state a claim against this Defendant on which relief can be granted. Thus, the Court dismisses Plaintiff's claims against this Defendant with prejudice.

### iv. Butler County Public Defender Office

The caption of Plaintiff's Amended Complaint names the Butler County Public Defender Office as a Defendant, while the Amended Complaint references a public defender named Charles Nedz. Whether Plaintiff intends to bring a monetary damages claim under §§ 1983 or 1985 against

---

[10] Again, the Court's best guess is that "they" refers to attorneys.

the Public Defender Office or against a specific public defender, the Amended Complaint is insufficient for several reasons.

First, the Amended Complaint only contains two allegations related to any public defenders, and the allegations lack sufficient factual matter to state a claim against any public defender or the Office. First, the Amended Complaint alleges that "attorney Charles Nedz," along with CYS and others, "w[as] told," presumably about Plaintiff's attempt to recover her son from Mr. Smith, "and didn't want to help [Plaintiff] but put [her] in to[] see a therapist." (ECF No. 10, at 10.) Second, Plaintiff asserts that Mr. Nedz "REFUSED to provide [her] with [her] case discovery and DECEIVED [her] into a guilty plea," that he did not "provide the courts with the knowledge of what the Truth behind this case is," and that "[h]e ran through [Plaintiff] like an animal through the slaughterhouse." (*Id.* at 11 (capitalization in original).) Based on these conclusory statements without any supporting detail, neither the Public Defender Office nor Mr. Nedz would be on notice of the specific actions that Plaintiff asserts resulted in a violation of her constitutional rights. Further, as to the Public Defender Office, the Amended Complaint has not alleged that a policy or custom has caused Plaintiff's injury, as is required to hold a municipal entity liable to Plaintiff. *Thomas*, 749 F.3d at 222 (citing *Monell*, 436 U.S. at 690–91); *Brown*, 520 U.S. at 404. Plaintiff's possible reference to a policy or custom through what she claims CYS and Domestic Relations told her about falsification of public records and sworn statements for the purposes of "clos[ing] a case and get[ting] paid" is insufficient to plausibly allege a policy or custom for the reasons the Court has already explained in this Opinion.

Plaintiff's claims against the Public Defender Office or any specific attorney therein fail for two additional reasons. First, to the extent the Amended Complaint seeks to state a claim against an individual public defender, such a claim under § 1983 is barred because public defenders

15

are not state actors as required by the statute. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."). Second, to the extent Plaintiff alleges that Butler County public defenders conspired against Plaintiff in their representation of her at any point in violation of § 1985(3), the Amended Complaint does not allege anything beyond the attorneys' "exercise of their official functions" in representing her, which is insufficient to show a conspiracy under § 1985(3). *Lewis v. Cnty. of Lehigh,* 516 F. Supp. 1369, 1371–72 (E.D. Pa. 1981). And Plaintiff has not alleged actions by public defenders that went beyond "activities intimately associated with the judicial phase of the criminal process." *Ross v. Meagan*, 638 F.2d 646, 648 (3d Cir. 1981), *overruled on other grounds by Neitzke v. Williams,* 490 U.S. 319 (1989). On these facts, any public defenders joined as defendants in this action would be "absolutely immune from liability for damages for the cause of action alleged in the complaint." *Lewis*, 516 F. Supp. at 1371–72 (citing *Ross*, 638 F.2d at 648–49; *Waits v. McGowan*, 516 F.2d 203, 205–07 (3d Cir. 1975); *Brown v. Joseph*, 463 F.2d 1046, 1049 (3d Cir. 1972), *cert. denied*, 412 U.S. 950 (1973)).

Given this Court's conclusion that any public defender Plaintiff seeks to recover from based on the circumstances alleged in the Amended Complaint is immune from Plaintiff's claims and considering Plaintiff's prior opportunity to amend, the Court concludes that further leave to amend would be futile and dismisses the claims against the Butler County Public Defender Office or attorneys within that Office with prejudice.

### v. Attorneys Bobette Roper Magnusen and Amy Burton

Finally, Plaintiff's §§ 1983 and 1985 damages claims against attorneys Bobette Roper Magnusen and Amy Burton fail to state a claim on which relief may be granted because the

Amended Complaint does not contain sufficient facts to show that these attorneys violated Plaintiff's constitutional rights. Plaintiff's primary allegations as to Ms. Magnusen are that "in court[,] [Ms. Magnusen] REFUSED to represent [Plaintiff] according to what happened to [Plaintiff]" and that Ms. Magnusen "filed a motion to have [Plaintiff] declared mentally incompetent." (ECF No. 10, at 11–12 (capitalization in original).) The Amended Complaint is even less detailed as to Ms. Burton; Plaintiff does not allege any actions by Ms. Burton but rather merely states that Plaintiff "ha[s] tried telling this idiot what happened as well, and came to the conclusion that all these people are in 'cahoots' and need to lose their license to practice law." (*Id.* at 12.) None of these allegations put either Ms. Magnusen or Ms. Burton on notice as to their alleged unconstitutional conduct toward Plaintiff.

As with Plaintiff's claims against the Public Defender Office or the attorneys within it, her claims against Ms. Magnusen and Ms. Burton also suffer from two other flaws. First, Plaintiff cannot seek damages under § 1983 against attorneys who represented her in the proceedings related to custody of her son—whether the attorneys are public defenders, privately retained, or court appointed—because they are not state actors under the statute. *Strother v. Pressman,* No. 91-7928, 1992 WL 3590, at *1 (E.D. Pa. Jan. 7, 1992) ("A defense attorney, whether court-appointed or privately retained, represents only his client, not the state. Thus, a defense attorney does not act 'under color of state law,' a critical element of a § 1983 claim." (citation omitted)). Second, Plaintiff's claims for damages specifically under § 1985(3) fail because attorneys performing their official duties when inextricably tied to the judicial process are immune from civil rights actions brought under that subsection. *See Waits*, 516 F.2d at 205–07.

Given the immunity that Plaintiff's former attorneys would have against Plaintiff's §§ 1983 and 1985 claims, the Court dismisses these claims with prejudice and without leave to amend.

C. **Plaintiff's RICO Claim**

As for the newly referenced RICO claim, the Plaintiff fails to state a claim as a matter of law as to all Defendants for several reasons. First, while Plaintiff appears to assert that Defendants fraudulently allowed Mr. Smith to have custody of Plaintiff's son based on a fraudulent birth certificate (*see* ECF No. 10, at 10–12)—which may constitute one "racketeering activity" defined as "fraud and related activity in connection with identification documents," *see* 18 U.S.C. § 1961(1)—Plaintiff fails to allege a "pattern of racketeering activity" as required to state a RICO claim, *see* § 1961(5). Plaintiff's "belie[f] that she *can show* an organized syndicate of corruption" and statement that she "*can provide* to a Jury" instances of unconstitutional conduct that "mak[es] [Defendants] amongst the most heinous of RICO perpetrators" facially reveals that Plaintiff does not now have sufficient facts to allege at this point and fall quite below the bar to state a plausible claim upon which relief can be granted. (ECF No. 10, at 19–20 (emphasis added).). Further, nothing in her Amended Complaint suggests that such could likely be developed through civil discovery.

Second, Plaintiff's RICO claim against Butler County or its Offices fails because the Third Circuit has held that a plaintiff cannot bring civil RICO claims against a municipality. *Tengood v. City of Philadelphia*, 529 F. App'x 204, 209 (3d Cir. 2013) ("[A] civil RICO claim 'cannot be maintained against a municipal corporation' because its mandatory award of treble damages is primarily punitive in nature." (quoting *Genty v. Resolution Trust Corp.*, 937 F.2d 899 (3d Cir. 1991)).

Finally, even if the Amended Complaint had plausibly alleged a "pattern of racketeering activity" by an appropriate defendant, Plaintiff lacks standing to sue under RICO. *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496

(1985) ("A plaintiff only has standing [under RICO] if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." (alteration in original) (internal quotation marks omitted)). Plaintiff's loss of custody of her son is not an injury to her business or property within the meaning of RICO. *See Genty*, 937 F.2d at 918–19 (declining to expand the meaning of "injury to business or property" to include personal, including emotional, injuries); *see also Bruenio v. Fenchen*, No. 93-4641, 1994 WL 2518, at *5 (E.D. Pa. Jan. 4, 1994) ("Bruneio is engaged in an emotionally charged and frustrating battle for the custody of his son. However, . . . I find such personal injuries arising from a domestic relations dispute are not the type of injuries Congress intended to be actionable under 19 U.S.C. § 1964(c).").

Based on the above, especially given Plaintiff's lack of standing to bring the RICO claim as set out in her Amended Complaint, the Court dismisses the RICO claims against all Defendants with prejudice and without leave to amend.

### D. Plaintiff's State Law Claims

Having dismissed Plaintiff's federal claims in her Amended Complaint, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims. "[A] [d]istrict [c]ourt may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." *Burnsworth v. PC Lab'y*, 364 F. App'x 772, 776 (3d Cir. 2010) (alterations in original) (citations and internal quotation marks omitted). In fact, the Third Circuit "has recognized that, where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendant state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Id.* Finding no such justification for exercising supplemental jurisdiction over Plaintiff's state law claims, the Court

dismisses those claims without prejudice as to their assertion in state court.

### IV. CONCLUSION

In sum, the Court concludes that it will dismiss Plaintiff's Amended Complaint in its entirety because each federal claim fails for at least one of the following reasons: it fails to sufficiently state a claim on which relief can be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii); it seeks recovery of monetary damages from defendants who are immune to such claims, *see id.* § 1915(e)(2)(B)(iii); and/or it asks this Court to exercise jurisdiction that the Court lacks under the *Rooker-Feldman* doctrine, *see Shallenberger*, 2020 WL 1465853, at *4. The Court also concludes it will dismiss Plaintiff's state law claims as it finds no basis to exercise supplemental jurisdiction over them. The Court dismisses Plaintiff's Amended Complaint without prejudice as to Plaintiff's claims for declaratory or injunctive relief for lack of jurisdiction, without prejudice to reassertion in state court as to Plaintiff's state law claims on supplemental jurisdiction grounds, and with prejudice as to all other claims for the reasons stated above. Leave to amend is denied because the Court concludes that further leave to amend would be futile given the legal impediments to Plaintiff's federal claims, the nearly identical nature of Plaintiff's original and amended complaints, and Plaintiff's failure in each complaint to allege sufficient factual matter to even begin to plausibly show that she is entitled to relief in this Court.

An appropriate Order will issue.

s/ Mark R. Hornak  
Mark R. Hornak  
Chief United States District Judge

Dated: November 23, 2021  
cc:     All counsel of record  
        Cheyenne Louise Goodin (by U.S. Mail)